Ruffin, C. J.
 

 The Court thinks there ought to be a
 
 venire de novo.
 
 We are not satisfied with the instructions given to the jury on the case made by the evidence, which went to them, and we are also, of opinion, that pro» per evidence was exeluded.
 

 Although proof of the signature of a dead subscribing witness is sufficient to allow the instrument to go to the jury, yet, where there is also evidence tending to disprove
 
 *450
 
 the execution of the instrument, we think it is not correct to say, that the evidence of the hand writing amounts
 
 to prima facie
 
 proof of the plaintiff's case: that is, as defined here to the jury, such as
 
 entitled
 
 the plaintiff to a verdict, unless the jury should be
 
 satisfied
 
 by the evidence on the other side, that the instrument was a forgery. That is changing the
 
 onus
 
 of proof improperly, as it seems to us; for, in such a case, it must be a question for the jury to determine, according to the weight of circumstances on each side, whether in fact the instrument was or was not executed. It is to be remarked, that, there being no direct proof on either side, as to the execution, it is purely a question of circumstantial proof. The evidence of execution from the proof of the hand-writing of the attesting witness is nothing more than a presumption, that what the dead man witnessed was executed. It is so commonly true, that the law allows it to be evidence to the jury, on which they may find-the fact. But it is not conclusive ; nor has it, that we are aware of, any such peculiar virtue, as to oblige the jury to find according to the probability it raises againt opposing probabilities, unless the latter be of such a character as to leave no doubt with the jury to
 
 satisfy
 
 them, that, in fact, the person, whose bond it purports to be, did not execute it. In such a case, as in others, the
 
 onus
 
 as to the execution is on the party setting up the deed ; and, although he is entitled in law to read the paper to the jury,' upon proof of the signature of the witness, yet there may be suspicious circumstances shewn on the other side, which may prevent the jury from being satisfied with the evidence of the band-writing of the witness, by itself, as
 
 establishing
 
 the execution : a thing
 
 to be
 
 done by the plaintiff, before he can entitle himself to a verdict. Hence, in such cases of suspicion, the plaintiff generally resorts to other evidence, in support of the presumption from the hand-writing of the witness : such as that he was a man of fair standing-;
 
 *451
 
 that he, the alleged obligor, acknowledged that he gave the bond; or that the signature is in the hand-writing, or that there were dealings between the parties, on which such a debt might probably have arisen ; or the like. In fine, the presumption of execution from the proof of the hand writing of the witness cannot stand higher thandi-rict proof of execution by the subscribing witness himself; and, as in the latter case, though the bond goes to the jury, yet they are to judge of the credit of the witness according to all the evidence, so, in the former case, all the presumptions on both sides are for the consideration of the jury, and unless they preponderate in favor of the plaintiff, it ought to be found that he failed to establish the issue on his side.
 

 In like manner it was calculated to mislead the jury, to instruct them that the testimony of King and that relating to the bond for $71 74, and the bad character of the son, was the
 
 only
 
 evidence tending to prove the forgery. It is true, that was all the affirmative evidence on that point. Indeed, but a part of that was of that kind of proof; for the evidence as to the son’s character and the small bond, afforded only negative presumptions, that the testator did not execute the bond in suit. But the circumstances afforded other evidence of the like negative character, relevant and material, which might have had much weight, had it been submitted to the jury in its proper connexion. It is classed by writers upon the law of evidence and presumptions, as among the strongest circumstantial proofs against a person, that he omits to give evidence to repel circumstances of suspicion against him, which he would have it in his power to give, if those circumstances of suspicion were unfounded. 3
 
 Stark. Ev.
 
 4S7. Hence when witnesses, for example, depose that the signature to a bond is not in the hand-writing of the person sued, and the obligee and alleged obligor live near each other and in the immediate vicinity of the place of
 
 *452
 
 trial, and the latter is a man of extensive business, whose hand-writing is generally known, and the former calls no witness to the point, when he might so easily do so, if the signature were genuine, the omission affords the same kind of evidence against the deed, that the omission of the possessor of property, recently stolen, to account for his possession, does against him. It is true, that it is not applicable to the case of a marksman ; b.ut it is but one example of that species of evidence in reply, which the party might give, and, no doubt, would give, if his case were honest. For example, here the defendant gave evidence, that, three years after the date of the instrument sued on, the testator gave the plaintiff a bond, and shewed also the consideration on which it was founded, and that, without much indulgence, the plaintiff sued him on it. Why, then, did the plaintiff, if he at that time had the bond, which is now in suit, indulge the testator on it for six years ? To meet that circumstance, the jury might well require the plaintiff to show by his clerk, or some member of his family at least, that in fact the paper was in his possession during that period; that there was a communication between him and the testator, and that the forbearance was extended at the latter’s request; or that there had been at the date of the bond, or prior, a transaction on which the testator might have owed the sum. The total omission of all such proof furnishes, in itself, presumptive evidence of no slight force. It was,, therefore, erroneous
 
 to lay it
 
 down, that there was no evidence in the cause, but the isolated circumstances enumerated.
 

 The observations just made serve also to render it plain, that the rejected evidence of the dealings in 1838 and 1839 was relevant and proper. It was in the nature of connected evidence of the dealings between the parties for several years, and the frequency of settlements and speedy oolleotion of the sums.du.e; and thus — espec«
 
 *453
 
 ially, in absence of all proof in reply — to render it less probable, that the plaintiff would have waited so long for the debt now demanded, if it existed as early as January 1838, and, thus, with the other circumstances, raise the inference, that the bond was not given then, nor, by consequence, at anytime.
 

 Upon the same principle — and also for other reasons— the evidence ought to have been received in relation to the other bonds held by the plaintiff, on which he. had probably instituted other suits against the defendant. It is true, that evidence, simply, that the plaintiff or his subscribing witness had forged another bond on the testator, would be no proof that the present instrument is a forgery. But the object here was to connect the three instruments together, and to shew that the fabrication of the whole was one act. Keeping in mind, that the plaintiff withheld three bonds on the testator, payable to the plaintiff; that they were all in the handwriting of the same subscribing witness, a man of very bad character; that they were of different dates, so as to purport that they had been made at different times; it certainly would be adding great and just suspicion to the transaction, if it should appear, that they were all made at one and the same time, and the plaintiff should still omit to show, by any dealings at any time, a fair origin for either. That they were written on the same sheet of paper made at the same time, though bearing different dates, might appear by direct proof; but that is hardly to be looked for in such a case; and certainly inspection is a mode in which the jury may, to some extent, judge, as from the color of the ink, the kind of pen, the water marks on the paper, or the fitting together of the different pieces, as in the case of Indentures anciently, that the work was all done at once. If such was the fact, it increases the force of the presumptions from .the defect of proof as to a consideration ; as the greater the magnitude of the dealings,
 
 *454
 
 the greater the likelihood, that they would be known and capable of proof; and, certainly, some reason ought to be given in explanation of the extraordinary circumstance, that, notwithstanding the bonds wrnre written and executed at the same time and on the same sheet of paper they should be dated differently, so as to purport to have arisen from different transactions. We must say, that, in our judgment, such evidence would have added greatly to the suspicions in the case, and was, therefore, fit to be laid before the jury, as tending to impair the presumption of execution, w'hich arose from the attestation of the wu-iter of the several instruments.
 

 Per Curiam. Judgment reversed and
 
 venire de novo.